JOHN S. LEONHARDT ET AL. V. CITIZENS BANK OF
ULYSSES.

FILED SEPTEMBER 23, 1898. No. 8109.

1. **Guaranty: BANKS: TRANSFER OF NOTE; RENEWAL: LIABILITY OF GUARANTOR.** A co-partnership engaged in banking transferred its assets to an incorporated bank in consideration of certain of

its stock, guarantying the payment of the notes transferred. Two of the co-partners became president and cashier, respectively, of the incorporated bank. The latter, by these officers, renewed and extended the time of payment of a note transferred to it by the co-partnership. Suit was brought by the incorporated bank against the co-partners on their guaranty to recover the debt evidenced by the note which had been renewed. *Held,* Under the circumstances, the renewal of the note was not a defense of which the co-partners could avail themselves.

2. **New Trial: JOINT MOTION.** A joint motion for a new trial by two or more parties, if not good as to all, should be overruled.

3. **Corporations: COMPROMISE WITH GUARANTOR OF NOTE.** Where co-partners engaged in banking transfer their assets to an incorporated bank, guarantying the paper transferred, and become stockholders of the incorporated bank, and some of them the managers thereof, a compromise and settlement of the liability of the co-partnership and the incorporated bank by its managing officers is voidable at the election of the incorporated bank, unless in such settlement the full amount due on the guaranty is paid, or the settlement is authorized or ratified by the stockholders or board of directors of the bank, the co-partners not voting as stockholders or directors.

4. **Payment: EVIDENCE.** The evidence examined, and *held* not to sustain the defense of payment interposed by the defendants below.

5. **Guaranty of Note: CONSTRUCTION.** A co-partnership engaged in banking transferred its assets to an incorporated ·bank under a written contract of guaranty in the following language: "All bills receivable taken by the new bank are to be fully guarantied by Leonhardt Bros. & Co., and such guaranty to remain on all bad and doubtful paper until same are collected." *Held,* A guaranty of payment, and not of collection.

ERROR from the district court of Butler county. Tried below before BATES, J. *Affirmed.*

*R. S. Norval, George W. Lowley, George P. Sheesley,* and *Sheesley & Aldrich,* for plaintiffs in error.

*Matt Miller* and *A. J. Evans, contra.*

RAGAN, C.

In 1889, John S. Leonhardt, Frederick W. Leonhardt, and George Dobson were co-partners, and as such owned and conducted a bank at Ulysses, Nebraska. In June of

said year these gentlemen and others organized a banking corporation known as the Citizens Bank of Ulysses. The Leonhardts and Dobson subscribed for the majority of the capital stock of the incorporated bank, and paid for the stock received by them with the assets of the co-partnership bank. It seems that the other stock subscribers paid cash for their stock. By an agreement in writing between the co-partnership and the incorporated bank all the furniture, fixtures, and assets of the co-partnership were transferred to the incorporated bank, the co-partnership guarantying the notes, accounts, etc., owned and by it turned over to the incorporated bank. Among the paper so transferred was a note of one Jensen for $1,260 dated June 2, 1888, and June 1, 1890, with ten per cent interest from maturity. Frederick W. Leonhardt, upon its organization, became the president of the incorporated bank and continued as such until June, 1892. George Dobson, upon its organization, became the cashier of the incorporated bank and remained such until April 30, 1891, at which date he ceased to be a stockholder and an officer of said bank. In November, 1894, the Citizens Bank of Ulysses brought this suit in the district court of Butler county against the Leonhardts and Dobson on their contract of guaranty made with it at the time of its organization, and at the time of its receiving from said co-partnership its bills, notes, and assets; and, for a breach of the contract, alleged that the debt of the said Jensen had never been paid, and, that there was due the bank from said co-partners, by reason of their guaranty, $1,260, with ten per cent interest from June 1, 1890. The bank had a verdict and judgment and the Leonhardts and Dobson have filed in this court a petition in error to review such judgment.

1. At or soon after the date of the maturity of the Jensen note, the bank took from Jensen a renewal of said note, and when this renewal note matured, or afterward, took from Jensen still another renewal note, and at the time this suit was brought it held the note of Jensen,

dated May 11, 1891, for $1,630.10. This note represented the original Jensen note, with interest. Plaintiffs in error contended below, and the contention is renewed here, that the several renewals of the Jensen note by the incorporated bank released them from their contract of guaranty. It is admitted that none of the plaintiffs in error guarantied the renewal notes thereon, that John S. Leonhardt had no knowledge of such renewals until this trial occurred, and that the contract of guaranty entered into between the plaintiffs in error and the incorporated bank did not expressly provide that the plaintiffs in error should be liable upon renewals made by the incorporated bank of paper transferred to it. But we think that the plaintiffs in error are in no position to claim that the renewals of the Jensen note released them from their contract of guaranty. While it is true that the plaintiffs in error did not put a guaranty of payment on the renewal notes, this is not a suit upon the Jensen note, or any renewal thereof, but a suit upon the original contract of guaranty made by the plaintiffs in error with the incorporated bank; and whatever renewal was made of the Jensen note by the incorporated bank was made by Dobson and Leonhardt, as cashier and president, respectively, of such bank. In other words, in that transaction Dobson and Leonhardt were acting as the agents of the incorporated bank in renewing the paper; and, if the effect of renewing the paper was to discharge the plaintiffs in error from their contract of guaranty, then Dobson and Leonhardt, by making the renewals, were in effect releasing themselves from their contract of guaranty with their principal. It is not necessary to cite an authority to show that they could not thus discharge their contract with the incorporated bank. If this Jensen note had been owned and held by a bank of which none of the plaintiffs in error had the management or control, and it had renewed the note without their knowledge or consent, it may be that they would have been thereby released from their contract of guaranty. But that is not

this case. And it may be that, if they had renewed the Jensen note by express authority of the board of directors of the incorporated bank, they not participating as directors in said action, or if the board of directors—the plaintiffs in error not participating as directors—had afterwards ratified this renewal of the Jensen note, that ratification would have amounted to a novation of the debt which Jensen owed the incorporated bank, and the plaintiffs in error would have been released. But these are not the facts in this case. Stripped of all legal technicalities the contention amounts to this: The plaintiffs in error guarantied the payment of the Jensen debt to the incorporated bank, and the plaintiffs in error, or some of them, as managers of the incorporated bank, renewed the Jensen note, and therefore the plaintiffs in error have discharged themselves from liability on their guaranty. We cannot subscribe to this doctrine.

2. Dobson insisted in the court below, and insists here, that, inasmuch as he was not a stockholder nor in any wise connected with the incorporated bank on May 11, 1891, at which date the bank took the last renewal of the Jensen note, he is therefore released from his contract of guaranty; and for this reason alone, if no other, the judgment holding him liable is erroneous. A sufficient answer to this is that the last renewal of the Jensen note was made by the incorporated bank by F. W. Leonhardt while acting as its president. The taking of this renewal was, under the circumstances, then, not a defense for F. W. Leonhardt. The motion for a new trial in this case was a joint one by the plaintiffs in error, and, since the district court could not have sustained this motion in favor of F. W. Leonhardt, it could not have sustained it on this ground in favor of Dobson. The motion for new trial was indivisible, and, if this defense was not good as to all the plaintiffs in error, it was not good as to either one of them. (*Minnick v. Huff*, 41 Neb. 516, and cases there cited.)

3. August 3, 1891, Dobson paid to the incorporated

bank $241.19, and at that time the incorporated bank, by F. W. Leonhardt, its president, executed and delivered to Dobson a writing which recited that the incorporated bank had received of Leonhardt Bros. & Company—the plaintiffs in error—$723.57 in full of all claims, obligations, guaranties, and demands of all kinds held by the incorporated bank against the plaintiffs in error. At this time, or soon afterward, it is claimed that F. W. Leonhardt paid to the incorporated bank $482.38, the balance of the money called for by this receipt. The plaintiffs in error claimed below, and renew the claim here, that on August 3, 1891, they paid to the incorporated bank this sum of $723.57 in pursuance of an accounting and a settlement then had between the plaintiffs in error and the incorporated bank of all liabilities of the former to such bank. We think there are two answers to this contention: (1.) Conceding that the settlement was made as claimed, it is not binding upon this incorporated bank. It was not made by the authority of the stockholders or the board of directors of the bank, and the settlement, if made, was never ratified by either the stockholders or the directors of the bank. These plaintiffs in error could not make a settlement with the incorporated bank, and discharge themselves from their guaranty to it, while the bank was represented by one of their number, unless by such a settlement they paid the full amount due to the bank upon their guaranty, or unless such settlement was authorized by the stockholders or board of directors, or afterward ratified by them. (2.) But we think the evidence is conclusive that this receipt was not given as evidence of a settlement had between the plaintiffs in error and the incorporated bank as to the liability of the former to the latter on their guaranty; that, as a matter of fact, the plaintiffs in error were indebted to the incorporated bank on overdrafts in the sum of $723.57, and whatever money was paid to the bank on August 3, 1891, was paid to discharge this overdraft; that this alleged settlement and payment

of money had no reference whatever to the liability of the plaintiffs in error on their guaranty of paper transferred to them by the bank.

4. Another claim of plaintiffs in error is that in October, 1892, plaintiffs in error and the bank had a settlement, and at that time the plaintiffs in error paid and discharged all their liability to the Citizens Bank, including the Jensen debt. It appears from the evidence that at that time the stockholders of the bank met and made an investigation of the bank's assets and their value, and they then determined to charge off, as it were, all bad, worthless, and doubtful paper, and to assess the stock an amount which, when paid into the bank, would make the stock worth par. It is claimed that one of the Leonhardts at this time transferred his stock to the bank at a certain figure; that the bank deducted from what it was to pay Leonhardt for the stock the assessment made thereon, and a sufficient sum to cover all the liabilities of the plaintiffs in error to the bank, including the Jensen debt, and paid him the difference. But the evidence in the bill of exceptions leaves no doubt in our minds of the untenableness of this contention. The stock was assessed, and one of the Leonhardts transferred his stock to the bank; but the money retained by the bank as proceeds of that stock sale was, we think, retained to pay indebtedness which the plaintiffs in error, or some of them, owed the bank, and the Jensen debt was not included in these debts. The evidence shows, and we think conclusively, that at the time the stockholders were investigating their assets the last renewal of the Jensen note was produced; and at the request of F. W. Leonhardt that note was classed with the good paper, Leonhardt then claiming to the other stockholders that the guaranty of the plaintiffs in error made the Jensen debt good, and that they were liable therefor, and expected soon to discharge it. As the renewal of the Jensen note was classified as good paper, no part of the assessment made upon the bank stock was applicable to

the discharge of that note; and the other evidence is quite as conclusive that the amount retained by the bank out of the proceeds of the sale of the Leonhardt stock over and above 'the assessment made thereon was retained for the purpose of being applied on other obligations of the plaintiffs in error, or some of them, to the bank, the Jensen debt not being one of such obligations.

5. The guaranty executed by the plaintiffs in error to the incorporated bank at the time of its organization and at the time it took the assets of the co-partnership contained this language: "All bills receivable taken by the new bank are to be fully guarantied by Leonhardt Bros. & Company, and such guaranty to remain on all bad and doubtful paper until same are collected." It is now insisted that this is a guaranty of collection merely and not a guaranty of payment, and that therefore the plaintiffs in error are not liable upon their contract of guaranty until the incorporated bank had failed, after exhausting its legal remedies, to collect the Jensen note; and, that, the only evidence of the non-collectibility of the Jensen note is the return of an execution unsatisfied, issued on a judgment rendered against Jensen on his note; and that, as the bank had not prosecuted the Jensen note to judgment, and tried to collect it by execution and failed, the judgment against the plaintiffs in error on their guaranty cannot stand. It has been held that the guarantor of the collectibility of a note cannot be sued until legal proceedings to enforce its collection have been taken against the maker of the note. (*Bosman v. Akelcy*, 39 Mich. 710.) But the contract entered into by the plaintiffs in error with the incorporated bank was not a guaranty of the collectibility of the paper transferred by them to the bank. It was a guaranty of payment. The case of *McMurray v. Noyes*, 72 N. Y. 523, cited by plaintiffs in error to sustain their contention that their contract was one of collectibility, is not authority for the contention in support of which it is cited. In that case the contract was that in case of fore-

closure and a sale of the mortgaged premises, the proceeds should prove insufficient to satisfy the debt which the mortgage secured, the grantor would pay the deficiency, and the court very properly held that that was a guaranty of collection.

The briefs criticise the action of the court in its instructions to the jury and in the admission and rejection of evidence. After a careful examination of the record, we have reached the conclusion that the district court committed no error in the respects indicated prejudicial to the plaintiffs in error. Indeed we think the verdict and judgment rendered are the only ones that could stand under the evidence in the record. The judgment of the district court is right and is in all things

AFFIRMED.

NORVAL, J., not sitting.